United States District Court
Eastern District of Michigan
Southern Division

The United States of America,                Criminal No. 23-cr-30294

                Plaintiff,                Hon. Sean Cox

v.

Isaac Young,

                Defendant.
_____/

## Government's Appeal of Magistrate Judge's Order of Release

The defendant, Isaac Young is a member of the "Cashgang," a violent street gang. On February 1, 2023, Young, a convicted felon, was shot during a shootout at an apartment complex in Wixom. During the shootout, Young possessed a pink Glock handgun that was fired at least four times.

This shootout occurred just 11 days after another firearm incident involving Young. In that case, police attempted to pull over a vehicle driven by a known Cashgang member. The vehicle did not stop and during the pursuit, two firearms were thrown from the vehicle. The vehicle eventually stopped and Young and several Cashgang members were in the vehicle along with several firearms. One of the firearms was the pink Glock that Young would use 11 days later in the Wixom shootout. A second firearm, a Draco, was used in a drivey-by shooting in Garden

City just hours after the Wixom shootout – leading investigators to believe that the Garden City shooting was to avenge the shooting of Young in Wixom.

When the Wixom shoutout occurred, Young was on felony probation for resisting and obstructing a police officer. That case involved a firearm as well. In that case, Young again was in a vehicle that fled from the police. When the vehicle eventually stopped, police located a firearm in the vehicle. However, they didn't locate Young in the vehicle because as the vehicle was coming to a stop, Young opened the door and fled the vehicle on foot.

Young has also been depicted in several photographs illegally possessing firearms with other Cashgang members and by himself:

*April 5, 2022, Posted to Instagram - Young in middle holding a semi-automatic handgun with an extended magazine*



*January 1, 2022 – Young holding an assault rifle*



Because Young is an unmitigated danger to the community and a flight risk, the government appealed the Magistrate Judge's order to release him. In this *de novo* review, this Court should detain him.

I.   **Factual Background**

The United States relies on its factual proffer during the July 18, 2023 detention hearing, as well as additional facts which are detailed below. This proffer was based upon police reports from various state and federal agencies, surveillance videos, and information provided by FBI SA Mark Kroger.

***February 1, 2023 – Shooting which led to Young's indictment for Felon in Possession of a Firearm.***

Young is a known member of Cashgang, a violent street gang. On February 1, 2023, at approximately 2:30am, a witness living in an apartment complex in Wixom called 911 and said that she heard multiple gunshots and about 20 seconds later, she heard a man pounding on her patio door. The witness did not open her door and the man left. That man was Young.

When officers arrived, they noticed the 911 caller's back patio area was covered in blood and officers noticed a blood trail near multiple fired casings. They also encountered Young near the blood trail. Young stated he had been shot in the leg but did not know what happened or who shot him.

Police searched the area and found 24 fired casings – four 9mm casings and 20. 357 caliber casings. Officers also noticed bullet holes in several cars and

4

surrounding apartments. The casings were found together near the start of the blood trail suggesting to officers that even though the casings were from two different firearms, the person, or persons that fired the combined 24 rounds were together and had shot at someone else. In other words, it appeared that Young was the target of a drive-by shooting and he and at least one person he was with fired back at the assailant 24 times.

On the blood trail, officers found a pink Glock 19, 9mm caliber handgun ("pink Glock") that had blood on it. The following photograph depicts the start of the blood trail where the fired casings were found; the area where officers encountered Young; the location where the pink Glock was located; and the area where the blood trail ended:



Laboratory results confirmed that the four fired casings recovered from the start of the blood trail were fired from the pink Glock. The Michigan State Police Crime Laboratory also completed DNA testing of a swab of the trigger and grip of the pink Glock. The DNA profile developed from those swabs was entered into the Combined DNA Index System (CODIS). On June 21, 2023, the Laboratory provided a high stringency association between the DNA profile obtained from the swab of the pink Glock and Young. A "high stringency association" is defined as a search that requires all alleles to match between two DNA profiles.

A cell phone was also recovered from Young and was searched pursuant to a search warrant. The search revealed multiple photographs of Young possessing firearms and photographs of Young and other Cashgang members. For example, on November 5, 2022, Young's phone created the following photograph depicting Young with known Cashgang members who were holding firearms:

*The pink Glock recovered from the Wixom shooting is in the waistband of R.F. Young is in the middle holding his arms up and his fingers pointed down*



Shortly after the DNA association was made between Young and the Glock, Young was indicted by a grand jury for felon in possession of a firearm – specifically, for possessing the pink Glock on February 1, 2023. (ECF No. 1, PageID.1). At the time this offense occurred, Young was on felony probation out of the Sixth Circuit Court in Oakland County for felony resisting and assaulting a police officer. Young was sentenced on that case on January 5, 2023 – less than a month before he was involved in the Wixom shootout with the pink Glock.

***January 20, 2013 – Young in vehicle with Cashgang members and firearms.***

On January 20, 2023 (only 15 days after he was placed on probation in Oakland County and only 12 days prior to the Wixom shootout), Young was a passenger in a vehicle that was driven by a known Cashgang member. Michigan State Police (MSP) attempted to pull the vehicle over for speeding, but the vehicle did not stop immediately. While Troopers were attempting to get the vehicle to pull over, someone in the vehicle threw two firearms out of the window. When the vehicle eventually stopped, Troopers observed the same pink Glock 19 inside the vehicle that Young possessed during the Wixom shootout.

Two additional firearms including a Draco were also located in the vehicle. The same Draco firearm was later associated through NIBIN to a drive-by shooting that occurred in Garden City on February 1, 2023, just hours after Young was involved in the Wixom shootout. Further investigation revealed that at the time of

7

the Wixom shooting – before officers arrived – Young also made group phone calls to several Cashgang members. These facts led investigators believe that the Garden City drive-by shooting was in retaliation for the shooting of Young just a few hours earlier.

### *April 4, 2022 – Young is involved in a beating at Westland Mall*

On April 23, 2022, Young and several known Cashgang members were involved in an attack on a person inside a clothing store in Westland. During the incident, one of Young's associates pulled out a handgun and appeared to strike the victim with it. The following photographs are still shots from the surveillance video:

*Young's associate carrying a handgun approaches the victim who is fighting with another Young associate*.



*One second Later, Young (wearing the yellow LA Lakers shorts) runs towards the fray*.

*One second later, Young is involved in the fray positioned next to the person with the handgun*



### June 4, 2022 Murder of J.S. in Detroit

On June 4, 2022, J.S. was standing in American Street in Detroit when surveillance video showed two people approach him and open fire. J.S. was shot multiple times and died from his gunshot wounds. Officers recovered multiple 9mm fired casings from the scene. A Few days later, a search warrant was

9

executed at an apartment in Farmington Hills associated to Young. During the search, officers recovered six firearms including a Glock 19 firearm that was linked through NIBIN to the murder of J.S. a few days earlier. During the search, officers also found financial cards for the yellow LA Lakers shorts Young wore during the Westland fight two months earlier.

Further tying Young to the apartment, during the search, officers also located a unique pair of sneakers (depicted in the photograph on the left) that Young also appears to be wearing in a photograph (photograph on the right):

 

### *Youngs Criminal History*

In 2017, Young pled guilty in the Third Circuit court in Detroit to two felony counts of a possession of a fraudulent financial transaction device. He was placed on probation and violated terms of his probation. On January 10, 2019, a warrant

was issued for a probation violation. On January 12, 2019, Young was arraigned on the probation violation and was released. On August 2, 2019, Young failed to appear for a probation violation hearing and another bench warrant was issued. Four months later, Young was arraigned on the bench warrant and his case was closed.

In 2020, Young was convicted of several felony fraud and theft counts in Indiana. Young was sentenced to a jail term and term of probation. Young was required to contact his probation officer three days after he completed his probation term in another case, but he failed to do so. The probation officer left Young a voice message, but Young did not return the call. A week later, the probation officer spoke to Young and ordered him to appear the next day. Young failed to appear, and a bench warrant was issued for his arrest. Young did not resolve his warrants in Indiana until 2022 when he was arrested in Oakland County for resisting and obstructing a police officer.

### *July 19, 2023 Detention Hearing*

The On July 19, 2023, a detention hearing was held before Magistrate Judge David R. Grand. The government requested detention arguing that Young was a danger to the community, that he posed a risk of nonappearance, and that there were no conditions that could be imposed that would reasonably assure the safety of the community and reasonably assure Young's appearance at future court

hearings. Pretrial services agreed with the government that Young posed a danger to the community and a risk of non-appearance. And while Pretrial Services believed that conditions could be imposed to reasonably assure Young's future appearance, they agreed with the government that no condition or combination of conditions could be imposed that will reasonably assure the safety of the community. As a result, Pretrial Services concurred with the government that Young should be detained.

After listening to proffers and arguments by the government and Young's Counsel, Magistrate Judge Grand ordered that Young be released on an unsecured bond with conditions but stayed the release order for 24 hours. The government now appeals the release order.

## II. Argument

### A. Standard

Under § 3145, this Court reviews a magistrate judge's pretrial order *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases).

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, a "judicial officer shall order the [pretrial] detention" of a defendant if the officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §

12

3142(e)(1). To detain a defendant, there must be either clear and convincing evidence that the defendant's release poses a risk of danger to the community, or a preponderance of the evidence that his appearance in court cannot be reasonably assured. 18 U.S.C. § 3142(f).

In evaluating whether pretrial detention is warranted, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

***The nature and circumstances of the offense weigh heavily in favor detention.***

Young is charged with being a felon in possession of a firearm. But he wasn't merely a felon who possessed a firearm in a closet in his home or in the glovebox in a vehicle. Instead, Young, who is a gang member, possessed a firearm during a shootout at 2:30 a.m. in a residential area. And the gun Young possessed was fired at least four times during the shootout. Several nearby parked vehicles were shot, and apartments were shot. It is extremely fortunate that no one was in these vehicles and that no residents of the apartment complex were shot while inside their apartments. This is not an "ordinary FIP case" if such a thing exits.

13

Instead, the nature and circumstances of Young's actions are extremely serious, and they placed every resident of that apartment complex in danger.

### *The weight of evidence as it relates to dangerousness and risk of nonappearance is strong.*

The weight of the evidence likewise supports detention. The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. "[S]trong evidence against a person . . . could increase the likelihood of danger to the community because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior." *United States v. Rice*, No. 3:04CR-83-R, 2006 WL 1687749, at *2 (W.D. Ky. June 19, 2006).

As discussed above, the weight of the evidence against Young is strong, which makes it more likely that he will engage in dangerous behavior. Young's dangerous behavior on February 1, 2023, is not the only thing this Court should consider when assessing dangerousness. Young is not new to the criminal justice system. He was sentenced to probation on a felony charge of resisting and obstructing a police officer less than a month before the Wixom shootout occurred. And in his Oakland County case, Young fled from a vehicle where police found a firearm This is not an aberration. Young is drawn to firearms and despite having

14

multiple felony convictions, he continues to possess firearms and he continues to associate with other gang members that possess firearms.

There is simply more to Young's dangerousness because of this gang element. "In dealing with the danger to the community or other person concept, the courts look to more than whether or not defendant himself has been guilty of physical violence[.]" *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). "[T]he concept of a defendant's dangerousness as used in the [Bail Reform] Act is to be given a broader construction than merely danger of harm involving physical violence. Congress was apparently concerned with the safety not only of a particular identifiable individual, perhaps a victim or witness, but also of the community as a whole." *Id*. (internal citations and quotes omitted). Young is a member of a dangerous gang, and the Court is not required to ignore this fact. *See, e.g.*, *United States v. Billingsley*, 682 F. App'x 681, 683 (10th Cir. 2017) ("[W]e are not convinced that the district court should ignore evidence about the group as a whole. It is important context that this DTO is intensely feared.").

There is also evidence tying Young to the firearm that was used in the murder of J.S. on June 4, 2022, as well as Young's involvement in the assault at Westland Mall where one of his associates struck the victim with a firearm. Furthermore, there is evidence that Young's associates engaged in a retaliation shooting in Garden City after Young was involved in a shootout in Wixom. Before

15

police arrive to the Wixom scene, Young contacted several of his fellow Cashgang members. And then a few hours later the same Draco that was found in a vehicle with Young and other gang members a few days earlier, was used in a drive-by shooting in Garden City. All of these facts make Young an absolute danger to the community.

Young has also proven in prior cases that he doesn't respect the courts and the orders they impose, and he has demonstrated that he will appear on his own terms. At the age of 24, he has already compiled numerous bench warrants for failing to appear and he has violated his previous terms of probation by failing to appear. As a result, there is a substantial risk that Young will not appear at future court hearings.

### *Young's history and characteristics weigh heavily in favor of detention.*

As mentioned previously, and as outlined in the Pretrial Services report, Young has an extensive criminal history. Furthermore, he committed the instant offense only one month after being placed on probation for a felony in Oakland County.

Young claims he has signed a lucrative recording contract with Capitol Records. However, even if true, that doesn't erase Young's prior behavior and it doesn't provide any assurances that Young won't continue to engage in dangerous criminal behavior. To suggest that a record contract will suddenly cure Young of

16

his infatuation with firearms; that is will suddenly make him disavow his fellow Cashgang members; and that it will erase whatever feuds involving Young that prompted the Wixom shootout and the Westland beating is dubious at best.

### *The community will be placed in danger if Young is released.*

Gang members don't care about communities and gang members don't end rivalries simply because someone signs a record contract. Just as the residents of the Wixom Apartment complex were placed in danger by Young on February 1, 2013, if Young is released now, the members of the community where he resides and the members of the communities where he travels will likewise be placed in danger.

### III. Conclusion

Because of his dangerousness and risk of non-appearance, the Court should order Young detained pending trial.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

*/s Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9623
mark.bilkovic@usdoj.gov

July 19, 2023

## Certificate of Service

I hereby certify that on July 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

*/s Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9623
Mark.bilkovic@usdoj.gov