## THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

                Plaintiff,

  -vs-

**ISAAC YOUNG**

                Defendant.

_____/

**Case No. 23-CR-20394-01**
**HON. LINDA V. PARKER**

### SENTENCING MEMORANDUM

## I.      PROCEDURAL BACKGROUND

Mr. Young will appear before this Honorable Court for sentencing on May 5, 2026, having admitted responsibility for violating two conditions of his probation; both Grade C violations. *See* ECF No. 56, PageID.345, *Violation Report Part 1: Petition for Summons,* Violations 2 and 3. Mr. Young was originally sentenced to a 3-year term of probation by now retired United States District Court Judge Sean Cox. Mr. Young, having a Grade C violation with a Criminal History Category IV, has a guideline range of 6-12 months imprisonment. Among other options, however, the Court may continue his probation, extend the term of probation, and/or modify the conditions of his probation.

## II.    SENTENCING CONSIDERATIONS

Section 3553(a) directs courts to impose a sentence that is "sufficient, *but not greater than necessary*," to meet the goals of sentencing. Those purposes include: (1) reflecting the seriousness of the offense; (2) promoting respect for the law and providing just punishment; (3) protecting the public; (4) deterrence; and (5) providing the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner. Under § 3553(a), courts are further directed to consider other factors including: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) need for the sentence imposed; (3) kinds of sentences available; (4) the sentencing guidelines range and any pertinent policy statement; (5) the need to avoid unwarranted sentence disparities among defendants with similar records and criminal conduct. *See* 18 U.S.C. § 3553(a). When a guideline "does not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 96, 109-10 (2007).

2

Under § 3553(a), the question is, with this offense and Mr. Young's history and characteristics, is imprisonment necessary to meet the goals of sentencing? The defense answers no.

### i.      Nature and Circumstances of the Offense

Mr. Young has admitted responsibility for Violations 2 and 3. Violation 2 involves his contractual performance with Keyon Fails and Malik Taylor, both of whom are on federal supervised release, in Mr. Fails' official video release for his newest "2 The Hard Way (First Day Out)", and Mr. Young's failure to obtain permission beforehand. Violation 3 comes from Mr. Young's failure to report police contact within 72 hours following an argument with his girlfriend at her apartment, which resulted in neighbors calling the police. Of critical note, no assault took place.

Mr. Young acknowledges that his conduct, while only Grade C, is unacceptable. Despite his reasonable, yet admittedly unrealized, assumption that probation would reject his request to perform with those with felony records, his fear of the word "no" is not an excuse. However, his conduct must be balanced with his age, the fact that he is essentially self-employed and working in the entertainment industry, which is objectively unstable, and his commitment to a new life.

### ii.      Mr. Young's Personal History and Characteristics

Mr. Young's personal history is outlined in his sentencing memorandum, but counsel will include some pertinent moments in Mr. Young's life for the Court's

convenience. Mr. Young was born into a beautiful family, yet life turned upside down when his father learned he had lung cancer. His father died when Mr. Young was just 5 years old. Mr. Young's father was truly his best friend, and he had a very difficult time with his passing.

While his mother stood strong raising her children as a single parent, employed by the U.S. Postal Service for the last 27 years, depression still plages her till this day. She worked through this depression, always provided stability for her children and even for friends in need around the neighborhood. However, Mr. Young always felt the need to make things easier for her. Through music, he has done so.

Mr. Young fell in love with music, rap in particular, and found solace and passion in being an artist. Mr. Young loves music and sharing his art; however, the rap life, particularly when you are trying to break into the industry, is expensive. Aside from studio time, equipment, and travel, young artists often feel a pressure to display a certain image through clothes and shoes and jewelry in order to garner support and likability from fans. The entertainment industry is fickle—Mr. Young is essentially self-employed, and the image he portrays is directly tied to his financial stability. The image became important, so he and classmates interested in a career in rap came up with the name "CashGang." CashGang is a group of friends who are committed to attaining wealth through rapping; it was not intended to be a dangerous street gang as the government alleges. As CashGang rose in popularity, so too did

4

Mr. Young. It turned his life around; he became known in the neighborhood, his songs started to generate income, and he secured a lucrative recording contract. He recognized his new status and began immediately giving back to the community, sharing his art and performing for free at various charity events and festivals. However, he still needs to make an income, and the more contracts he rejects, or the more shows he misses, the less likely he is to receive additional opportunities.

It is important to remember that at the time of the offense, even during this probationary period, Mr. Young is still an emerging adult. By society's standards, Mr. Young is a grown man. However, the Supreme Court has acknowledged "what 'any parent knows'" and what research has repeatedly shown: juveniles and emerging adults are different for actual adulthood. *Miller v. Alabama,* 567 U.S. 460, 471 (2012). The prefrontal cortex of the brain does not reach majority until around age 25—Mr. Young's current age—and this part of the brain controls impulse control, complex decision-making, inhibition, and planning. *Id*.; *see also* U.S.S.C., *Youthful Offenders in the System*, at 5 (May 2017).

Incarceration is not the proper resolution in this case. Studies consistently find that incarceration is itself a traumatic experience for young people, and "it can exacerbate the difficulties experienced by youth who have previous exposure to violence and other adverse childhood experiences." Richard Mendel, *Why Youth Incarceration Fails: An Updated Review of the Evidence,* The Sentencing Project

(March 1, 2023). Incarcerating youth "impedes their ability to mature psychologically … [i]n other words, the purported solution (incarceration) does not address the underlying cause of the conduct (immaturity)." *Id.*

Though prison is touted to be a place for rehabilitation, and certainly there is opportunity for programming, the inherently violent and stressful prison environment compounds the need for therapeutic intervention. To Mr. Young's credit, he began working on an impossible dream and latched on to its tail. When it comes to the entertainment industry, Mr. Young is expendable, particularly in this early stage of his career. To a young man who is working diligently to bring financial stability to himself and his family, that realization is startling. Combined with an admitted immaturity, Mr. Young made the wrong choice. He is trying to navigate the nearly impossible task of meeting his contractual obligations, potentially without working with several rap artists around the world with felony records, including others signed with Capital Records. Critically, the Court should recall the letter submitted by Capital Records at the last status conference that essentially admitted that making money is more important than the artist himself. Instead of trying to work *with* probation to meet those obligations, he attempted to handle it on his own. The proper resolution is to admonish Mr. Young for his failure to give probation the opportunity to work with him and meet his needs, not to incarcerate him. We ask this Honorable Court to reasonably modify this condition to allow him to continue a

6

lucrative contract beyond his wildest dreams, which can only elevate his career by broadening his horizons.

### iii.    <u>Sentencing Rationale: Punishment, Deterrence, Protection of the Public, and Rehabilitation</u>

Mr. Young takes responsibility for his conduct, but a prison sentence is not appropriate in this case. If the Court accepts the defense's recommended modification of his sentence of probation, he will be in a position to keep his employment, still continue to build trust and cooperation with probation and navigate his contractual obligations. A modification of his probation will be more beneficial and life-changing for Mr. Young and his community than a prison term.

Respectfully submitted,

/s/ *Robert F. Kinney*
Robert F. Kinney, P35842
Attorney for Mr. Young
615 Griswold Street, Suite 1325
Detroit, MI  48226
(313) 963-5310 (office)
rfkinney@sbcglobal.net

Dated: May 3, 2026